**UNITED STATES DISTRICT COURT**
**FOR THE MIDDLE DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| CHERYL SHOLTIS, | : | CIVIL NO: **3:CV-11-995** |
| | : | |
| Plaintiff | : | |
| | : | (Judge Nealon) |
| v. | : | |
| | : | (Magistrate Judge Blewitt) |
| MICHAEL J. ASTRUE, | : | |
| COMMISSIONER OF THE | : | |
| SOCIAL SECURITY | : | |
| ADMINISTRATION, | : | |
| | : | |
| Defendant. | : | |

## <u>REPORT AND RECOMMENDATION</u>

## I. PROCEDURAL HISTORY

The Plaintiff filed a Complaint on May 24, 2011 appealing the decision denying her application for Social Security Disability Benefits. (Doc. 1). The Plaintiff, who is represented by counsel, filed a Motion for Leave to Proceed in forma pauperis. (Doc. 2). The Complaint names as Defendant Michael J. Astrue, Commissioner of Social Security. (Doc. 1).

On August 1, 2011, the Defendant filed an Answer to the Complaint. (Doc. 9). Defendant also filed the administrative record. (Doc. 10). On September 14, 2011, the Plaintiff filed a Brief in support of her Complaint. (Doc. 11). On October 12, 2011, the Defendant filed a Brief. (Doc. 13).

The Plaintiff filed an initial application for disability insurance benefits ("DIB") and supplemental insurance benefits ("SSI") pursuant to Title II and XVI on October 31, 2007,

alleging disability since September 6, 2007.  (Doc. 10-5; pp. 110-114)[1].  This application was initially denied by the Agency on July 25, 2008.  (Doc. 10-2; pp. 1-6).  The Plaintiff filed a written request for a hearing on September 19, 2008. (Doc. 10-2; pp. 11-13).  On October 6, 2009, a hearing was held before the Administrative Law Judge ("ALJ") in Wilkes-Barre, Pennsylvania.  (Doc. 10-2; pp. 27-63).

On November 9, 2009, the ALJ issued an Order denying Plaintiff's application for benefits.  (Doc. 10-2; pp. 14-26).  The Plaintiff appealed the ALJ's decision to the Appeals Council.  (Doc. 10-2; pp. 11-13).  On March 23, 2011, the Appeals Council denied the Plaintiff's appeal.  (Doc. 10-2; pp. 1-6).  The Plaintiff then initiated the instant civil action in this Court.  (Doc. 1).

For the reasons set forth below, we will recommend that the Plaintiff's appeal from the decision of the Commissioner of Social Security denying her claim for DIB and SSI benefits be denied.

## II.  STANDARD OF REVIEW

When reviewing the denial of disability benefits, we must determine whether the denial is supported by substantial evidence.  *Brown v. Bowen*, 845 F.2d 1211, 1213 (3d Cir. 1988); *Johnson v. Commissioner of Social Sec.*, 529 F.3d 198, 200 (3d Cir. 2008).  Substantial evidence "does not mean a large or considerable amount of evidence, but rather such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Pierce v. Underwood*,

---

[1]        Our citations to the administrative record, found at Doc. 10, reflect the docket number followed by the specific Bates stamped page found on the bottom right of the of record.

487 U.S. 552 (1988); *Hartranft v. Apfel*, 181 F.3d 358, 360. (3d Cir. 1999), *Johnson*, 529 F.3d at 200.   It is less than a preponderance of the evidence but more than a mere scintilla. *Richardson v. Perales*, 402 U.S. 389, 401 (1971).

To receive disability benefits, the Plaintiff must demonstrate an "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months."   42 U.S.C. § 432(d)(1)(A). Furthermore:

> [a]n individual shall be determined to be under a disability only if [her] physical or mental impairment or impairments are of such severity that [she] is not only unable to do [her] previous work but cannot, considering [her] age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy, regardless of whether such work exists in the immediate area in which [she] lives, or whether a specific job vacancy exists for [her], or whether [she] would be hired if [she] applied for work.   For purposes of the preceding sentence (with respect to any individual), "work which exists in the national economy" means work which exists in significant numbers either in the region where such individual lives or in several regions of the country.

42 U.S.C. § 423(d)(2)(A).

## III.  DISABILITY EVALUATION PROCESS.

A five-step evaluation process is used to determine if a person is eligible for disability benefits.   *See* 20 C.F.R. § 404.1520.   *See also Plummer v. Apfel*, 186 F.3d 422, 428 (3d Cir. 1999).   If the Commissioner finds that a Plaintiff is disabled or not disabled at any point in the sequence, review does not proceed any further.   *See* 20 C.F.R. § 404.1520.

The Commissioner must sequentially determine: (1) whether the claimant is engaged in substantial gainful activity; (2) whether the claimant has a severe impairment; (3) whether the claimant's impairment meets or equals a listed impairment; (4) whether the claimant's impairment prevents the claimant from doing past relevant work; and (5) whether the claimant's impairment prevents the claimant from doing any other work.  *See* 20 C.F.R. § 404.1520.

Here, the ALJ proceeded through each step of the sequential evaluation process and concluded that the Plaintiff was not disabled within the meaning of the Act. (Doc. 10-2; pp. 14-26).  At step one, the ALJ found that the Plaintiff met the insured status requirements of the Social Security Act through December 31, 2010.  (Doc. 10-2; p. 19).   At step two, the ALJ concluded Plaintiff did not engage in substantial gainful work activity at any time since September 6, 2007, the alleged onset date of her disability.  (Id.).  At step three, the ALJ concluded that the Plaintiff's impairments (ankle injury, ulcers/colitis, and depression)  were severe within the meaning of the Regulations.  (Id.).   At step four, the ALJ found that the Plaintiff's impairments did not meet or medically equal one of the listed impairments.  (Doc. 10-2, p. 20).  *See* 20 C.F.R. §§ 404.1520(d), 404.1525, 404.1526, and 416.926.  (Doc. 10-2; p. 20).

The ALJ also determined that the Plaintiff had the residual functional capacity to perform light work.  (Doc. 10-2; p. 21).  Further, the ALJ also found that the Plaintiff "should be able to perform occasional use of foot controls with the left lower extremity; limited to simple, routine, repetitive tasks; occasional climbing of ramps and stairs, but never climbing ropes, ladders and scaffolds; avoid exposure to extreme  temperature changes, including extreme cold, heat and sunlight; avoid hazards which include machinery and heights; occasional balancing, stooping,

kneeling, crouching, and crawling; and limited to jobs performed while using a hand held assistive device in the dominant right upper extremity at all times when standing." (Id.)

At step six, the ALJ found that the Plaintiff was not capable of performing her past relevant work. (Doc. 10-2; p. 24). The ALJ found that considering the Plaintiff's age, education, work experience and residual functional capacity, there were significant numbers of jobs in the national economy that the Plaintiff could perform. See 20 C.F.R. 404.1569, 404.1569(a), 416.969 and 416.969(a). (Doc. 10-2; p. 24). The ALJ therefore concluded that the Plaintiff was not under a disability, as defined in the Act, at any time from September 6, 2007, the alleged onset date, through November 9, 2009, the date of the ALJ's decision. See 20 C.F.R. §§ 404.1520(g) and 416.920(g). (Doc. 10-2; p. 25).

A vocational expert, Jodie Dougherty, testified at the Plaintiff's hearing before the ALJ. The ALJ posed a hypothetical question to the vocational expert, inquiring whether significant jobs existed in the national economy for an individual of the Plaintiff's age, education, work experience and residual functional capacity could perform. (Doc. 10-2; p. 57). The vocational expert testified that a person with these limitations could perform the requirements of representative sedentary, unskilled occupations such as work as a mail clerk, information clerk or ticket taker. (Id.).

## IV. BACKGROUND.

The Plaintiff was born on May 25, 1960, and was forty-nine (49) years old on the date of the ALJ's decision, which classifies her as a younger individual pursuant to the Act. See 20 C.F.R. 404.1563 and 416.963. (Doc. 10-2; p. 24). The Plaintiff has a limited education and is

able to communicate in English.  (Id.).  Her past relevant work experience is unskilled.  (Doc. 10-2; p. 56).   In the past, Plaintiff has worked as a production worker performing machine packaging duties. (Id.).  She also worked as a machine operator in a cigar factory.  (Id.).  The Plaintiff testified that she stopped working in 2005 because her pain was getting worse and the standing was not comfortable.  (Doc. 10-2; p. 37).

The Plaintiff suffers from various physical and consequential mental impairments, including colitis, chronic  fatigue, and depression.  (Doc. 11; p. 4).  The ALJ found that the Plaintiff had the following severe impairments: ankle injury; ulcers/colitis; and depression. (Doc. 10-2; p. 19).

At the time of the ALJ hearing, the Plaintiff testified that she resided with her fiancé. (Doc. 10-2; p. 36). In terms of her daily activities, the Plaintiff testified that she could drive for short trips. (Id.).  The Plaintiff testified that she could shower and dress herself, make meals while sitting down and put dishes in the dishwasher.  (Doc. 10-2; p. 40).   The Plaintiff testified that she had to go to the bathroom a lot, was in constant pain, her legs and joints hurt and, that she was forgetful.  (Doc. 10-2; p. 38).   The Plaintiff further testified that she  had chronic fatigue syndrome and was tired all the time.  (Id.).

## V.  DISCUSSION.

The Plaintiff argues that substantial evidence does not support the ALJ's finding that she was not disabled.  Specifically, the Plaintiff argues that the ALJ erred in not giving her treating physician's opinion proper weight.  (Doc. 11).

As stated, the ALJ found that the Plaintiff was not under a disability within the meaning of the Social Security Act at any time from September 6, 2007, the alleged onset date, through November 9, 2009, the date of the ALJ's decision.  (Doc. 10-2; p. 25).  The Plaintiff argues that the ALJ erred by improperly discrediting  Dr. Singh's findings and opinion, and by affording them less weight than the opinion of the non-examining medical expert.  (Doc. 11; p. 8).   The Plaintiff argues that her treating primary care physician, Dr. Gursharan Singh, provided medical statements and treatment notes which prove Plaintiff's impairments met the threshold for disability used by the Social Security Administration.  (Id.).

In reaching the decision that the Plaintiff did not have an impairment that met the criteria to meet or medically equal one of the listed impairments in 20 C.F.R. 404, Subpart P, Appendix, the ALJ rejected the opinion of the Plaintiff's treating physician. (Doc. 10-2; p. 23).  Dr. Singh found that Plaintiff was incapable of even sedentary work activity on a sustained basis and in September 2009, he found the Plaintiff was disabled due to her colitis, degenerative joint disease of the back, thyroid disorder, anxiety depression, chronic fatigue and left ankle injury.  (Doc. 10-7; p. 310).  The ALJ gave little weight to Dr. Singh's opinion as "these findings are not consistent with the medical evidence of record, nor is there any documentation of treatment for degenerative joint disease of the back or a thyroid disorder in the file." (Doc. 10-2; p. 23).  The ALJ further considered the assessments made by the non-examining medical physicians with the Disability Determination Service (SSR 96-6p).  (Doc. 10-2; p. 24).   The ALJ gave appropriate weight to Dr. Redding who found that Plaintiff had the residual functional capacity to perform the physical demands of light work activity without further limitation and did not account for

Plaintiff's need for a cane for ambulation.  (*Id.*).   The ALJ also gave great weight to the assessment of Dr. Taren who completed a mental residual capacity assessment and found that Plaintiff was limited in her ability to understand and remember complex or detailed instructions. However, Dr. Taren found that Plaintiff was  capable of remembering simple instructions and making simple decisions despite her psychiatric impairments which was consistent with the medical evidence of record.  (Doc. 10-2; p. 24).

The Plaintiff claims that the ALJ erred when he failed to give controlling weight to the opinions of Dr. Singh.  (Doc. 11 at 8).  However, a medical source's opinion as to the ultimate conclusion of disability is not dispositive because opinions of disability are reserved to the Commissioner.  20 C.F.R. § 416.927(e)(1) (2001).   Furthermore, we agree with Defendant that substantial evidence supports the ALJ's finding that the Plaintiff is not disabled.

The Court of Appeals for the Third Circuit set forth the standard for evaluating the opinion of a treating physician in the case of *Morales v. Apfel*, 225 F.3d 310  (3d Cir. 2000).  The Court stated:

> A cardinal principle guiding disability eligibility determinations is that the ALJ accord treating physicians' reports great weight, especially "when their opinions reflect expert judgment based on a continuing observation of the patient's condition over a prolonged period of time." *Plummer [v. Apfel*, 186 F.3d 422, 429 (3d Cir.1999)] (quoting *Rocco v. Heckler*, 826 F.2d 1348, 1350 (3d Cir.1987)); see also *Adorno v. Shalala*, 40 F.3d 43, 47 (3d Cir.1994); *Jones*, 954 F.2d at 128; *Allen v. Bowen*, 881 F.2d 37, 40-41 (3d Cir.1989); *Frankenfield v. Bowen*, 861 F.2d 405, 408 (3d Cir.1988); *Brewster*, 786 F.2d at 585.  Where, as here, the opinion of a treating physician conflicts with that of a non-treating, non-examining physician, the ALJ may choose whom to credit but "cannot reject evidence for no reason or for the wrong reason."  *Plummer*, 186 F.3d at 429 (citing *Mason v. Shalala*, 994 F.2d 1058, 1066 (3d Cir.1993)).  The ALJ must consider the medical findings that support a treating physician's opinion that the claimant is disabled.  See *Adorno*, 40 F.3d at 48.  In choosing to reject the treating physician's assessment, an ALJ may

> not make "speculative inferences from medical reports" and may reject "a treating physician's opinion outright only on the basis of contradictory medical evidence" and not due to his or her own credibility judgments, speculation or lay opinion. *Plummer*, 186 F.3d at 429; *Frankenfield v. Bowen*, 861 F.2d 405, 408 (3d Cir.1988); Kent, 710 F.2d at 115.

*Id*. at 317-318.

Similarly, the Social Security Regulations state that when the opinion of a treating physician is "well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in your case record," it is to be given controlling weight. 20 C.F.R. § 416.927(d)(2).  When the opinion of a treating physician is not given controlling weight, the length of the treatment relationship and the frequency of examination must be considered.  The Regulations state:

> Generally, the longer a treating source has treated you and the more times you have been seen by a treating source, the more weight we will give to the source's medical opinion. When the treating source has seen you a number of times and long enough to have obtained a longitudinal picture of your impairment, we will give the source's opinion more weight than we would give it if it were from a non-treating source.

20 C.F.R. § 416.927(d)(2)(l).

Additionally, the nature and extent of the treatment relationship is considered. The Regulations state:

> Generally, the more knowledge a treating source has about your impairment(s) the more weight we will give to the source's medical opinion. We will look at the treatment the source has provided and at the kinds and extent of examinations and testing the source has performed or ordered from specialists and independent laboratories. For example, if your ophthalmologist notices that you have complained of neck pain during your eye examinations, we will consider his or her opinion with respect to your neck pain, but we will give it  less weight than

that of another physician who has treated you for the neck pain. When the treating source has reasonable knowledge of your impairment(s), we will give the source's opinion more weight than we would give it if it were from a nontreating source.

20 C.F.R. § 416.927(d)(2)(ii).

In the instant matter, the Plaintiff presented the opinion from her treating physician Dr. Singh, who stated that Plaintiff suffers from colitis, degenerative joint disease of the back, thyroid disorder, generalized anxiety disorder with depression, chronic fatigue syndrome and status post left ankle injury.  Dr. Singh opined that these impairments rendered Plaintiff "not suitable to maintain any type of gainful employment or training."  (Doc. 10-7; p. 310).  The ALJ stated that he was rejecting Dr. Singh's opinion because it was not supported by the evidence of record. (Doc. 10-2; p. 23).  We find that the record supports the weight which the ALJ gave to Dr. Singh's opinion. The ALJ noted that the Plaintiff's treatment has been essentially routine and conservative, she has been prescribed and takes the appropriate medication for her impairments and her medications have been effective in controlling her symptoms.  (Doc. 10-2; p. 22).  The medical records revealed that Plaintiff fell down the steps in September 2007 causing injury to her right ankle.  (Doc. 10-7; pp. 219-220).  Plaintiff testified that she was prescribed a cane by the Hazleton General Hospital .  (Doc. 10-2; p. 39).    The ALJ noted that a January 2008 CT scan of Plaintiff revealed the old ankle injury, but was otherwise unremarkable.  (Doc. 10-7; pp. 225-226).  The ALJ further noted that in March 2008, the Plaintiff had an arterial venogram of the lower extremity which revealed there was no evidence of deep venous obstruction of either lower extremity.  (Doc. 10-7; pp. 237-240).  In April 2008, Plaintiff had an orthopaedic

consultation with Dr. Hans  Olsen who noted that Plaintiff did not have any significant abnormalities of the lower extremities and her ankles were essentially normal. (Doc. 10-7; pp. 253-254).  Plaintiff further had an internal evaluation by Dr. Chikarmane who found Plaintiff's range of motion to be within normal limits noting that she did walk with a limit, but did not have a need for an assistive device. (Doc. 10-7; pp. 241-243).

Plaintiff also argues that the ALJ failed to recognize the significance of her ten (10) year history of ulcerative colitis with bouts of nausea, vomiting and diarrhea.  (Doc. 11, p. 9). However, the ALJ found that this condition was a severe impairment. (Doc. 10-2; p. 19).  Dr. Singh's opinion about the severity of the Plaintiff's ulcerative colitis impairment is inconsistent with the evidence of record.  Dr. Stasik, who specializes in diseases of the colon and rectum, saw Plaintiff once a year for an annual check-up and treatment and prescribed the Plaintiff with Predisone to help control her symptoms.  (Doc. 10-7; pp. 202-203).  In February 2006, the Plaintiff underwent a colonoscopy which revealed Crohn's colitis.  (Doc. 10-7; pp. 204-205). Dr. Singh treated the Plaintiff beginning on February 6, 2008. (Doc. 10-7; 310).   Dr. Stasik suggested that a more controlled diet and refraining from the use of alcohol could help control Plaintiff's symptoms.  Plaintiff was able to work with the diagnosis since 1989 and furthermore, Dr. Stasik, a colon specialist, "was reluctant to proclaim this patient disabled." (Doc. 10-7; 294).

Plaintiff further argues that the ALJ failed to recognize the significance of the Plaintiff's non-union in her right ankle.  (Doc. 11; p. 9). However, the ALJ found that this condition was a severe impairment.  (Doc. 10-2; p. 19).  Dr. Singh's opinion about Plaintiff's ankle impairment is inconsistent with the evidence of record.  In January of 2008, Plaintiff underwent a CT of her

feet which revealed an old fracture of the right ankle, but was otherwise unremarkable.  (Doc. 10-7; pp. 225-226).     Furthermore, Plaintiff underwent an arterial venogram of the lower extremity in March of 2008 which showed no evidence of deep venous obstruction of either lower extremity.  (Doc. 10-7; p. 237).  In April 2008, Plaintiff had an orthopaedic consultation with Dr. Olsen who reviewed the x-rays and noted no significant abnormalities of the lower extremities.  (Doc. 10-7; 253-254).  Dr. Olsen also found Plaintiff's ankles to be essentially normal.  (Id.).  An internal consultative evaluation by Dr. Chikarmane revealed that Plaintiff had full motor strength in her lower extremities, no muscle atrophy, and the fact that she no longer used a cane.  (Doc. 10-7; 241-243). The ALJ determined that the Plaintiff did not meet the listing requirements for malunion/nonunion of the right ankle and the need for an assistive device for ambulation.  The ALJ noted that there were not any diagnostic studies to substantiate the claim of non-union and that the Plaintiff used one cane and the criteria of Section 1.02, Major Dysfunction of a Joint, of the Listing of Impairments requires two.

In deciding a claim for disability benefits, the ALJ is entitled to rely not only on what the record says, but also on what it does not say.  *Dumas v. Schweiker*, 712 F.2d 1545, 1553 (2d Cir. 1983); *Lane v. Commissioner of Social Security*, 100 Fed. Appx. 90, 95 (C.A. 3d 2004).  Thus, because of the lack of evidence in the record regarding  Dr. Singh's opinion in February 2007 that Plaintiff was incapable of even sedentary work activity on a sustained basis and his May 2009 diagnosis that Plaintiff was "disabled" due to her colitis, degenerative joint disease of the back, thyroid disorder, anxiety, depression, chronic fatigue and left ankle injury, the ALJ was proper in rejecting his opinions.  Furthermore, no documentation exists in the record that there was any treatment of Plaintiff for degenerative joint disease of the back or a thyroid disorder.

Thus, we agree with the Defendant that substantial evidence supports the ALJ's decision that the Plaintiff fails to meet the listing requirements of any impairment and, that she and is not disabled.

## VI.  RECOMMENDATION

Based upon the foregoing, it is respectfully recommended that the Plaintiff's appeal from the decision of the Commissioner of Social Security denying her claim for SSI benefits, (Doc. 1), be denied.


<u>s/ Thomas M. Blewitt</u>
**THOMAS M. BLEWITT**
**United States Magistrate Judge**


**Dated: January 6, 2012**

**UNITED STATES DISTRICT COURT**
**FOR THE MIDDLE DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| CHERYL SHOLTIS, | : | CIVIL NO: **3:CV-11-995** |
| Plaintiff | : | |
| | : | (Judge Nealon) |
| v. | : | |
| | : | (Magistrate Judge Blewitt) |
| MICHAEL J. ASTRUE, | : | |
| COMMISSIONER OF THE | : | |
| SOCIAL SECURITY | : | |
| ADMINISTRATION, | : | |
| | : | |
| Defendant. | : | |

## NOTICE

**NOTICE IS HEREBY GIVEN** that the undersigned has entered the foregoing **Report and Recommendation** dated **January 6, 2012.**

Any party may obtain a review of the Report and Recommendation pursuant to Rule 72.3, which provides:

Any party may object to a magistrate judge's proposed findings, recommendations or report addressing a motion or matter described in 28 U.S.C. § 636 (b)(1)(B) or making a recommendation for the disposition of a prisoner case or a habeas corpus petition within fourteen (14) days after being served with a copy thereof. Such party shall file with the clerk of court, and serve on the magistrate judge and all parties, written objections which shall specifically identify the portions of the proposed findings, recommendations or report to which objection is made and the basis for such objections. The briefing requirements set forth in Local Rule 72.2 shall apply. A judge shall make a *de novo* determination of those portions of the report or specified proposed findings or recommendations to which objection is made and may accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate judge. The judge, however, need conduct a new hearing only in his or her discretion or where required by law, and may consider the record developed before the magistrate judge, making his or her own determination on the basis of that record. The judge may also receive further evidence, recall witnesses or recommit the matter to the magistrate judge with instructions.

s/ Thomas M. Blewitt
**THOMAS M. BLEWITT**
**United States Magistrate Judge**

**Dated: January 6, 2012**